UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH PEREZ,<br><br>　　　　　　　Petitioner,<br>　　v.<br><br>CALVIN JOHNSON[1], *et al.*,<br><br>　　　　　　　Respondents. | Case No. 2:18-cv-02077-KJD-VCF<br><br>ORDER |

## I.　INTRODUCTION

Petitioner Joseph Perez filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  In his counseled first amended petition, Perez asserts that his trial counsel was ineffective for failing to move to withdraw his guilty plea because his plea was not made knowingly, voluntarily, or intelligently.  (ECF No. 14).  The Court denies Perez's first amended habeas petition, denies him a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly.

## II.　BACKGROUND

### A.　State trial court proceedings

On August 30, 2011, a grand jury indicted Perez on seven counts: (1) conspiracy to commit murder; (2) burglary; (3) murder with use of a deadly weapon, victim 60 years of age or older; (4) first degree kidnapping with use of a deadly weapon, victim 60 years of age or older; (5) robbery with use of a deadly weapon, victim 60 years of age or older; (6) grand larceny auto; and (7) possession of credit or debit card without cardholders consent.  (ECF No. 23-4).  At the arraignment, Perez, who appeared with counsel, pled not guilty, and waived his speedy trial rights. (ECF No. 23-10 at 2, 6-8).  On September

---

[1] The Nevada Department of Corrections inmate locator states that Petitioner Perez is incarcerated at High Desert State Prison.  Calvin Johnson is the current warden for that facility.  The Clerk of the Court is directed to substitute "Calvin Johnson" as the respondent on the docket sheet for "Respondent Attorney General of the State of Nevada."  *See* Fed. R. Civ. P. 25(d).

28, 2011, the State filed a Notice of Intent to Seek Death Penalty against Perez. (ECF No. 23-13).

On July 17, 2014, Perez, through counsel, filed a Motion to Declare Defendant Mentally Retarded and Request for Evidentiary Hearing Pursuant to NRS § 174.098 and attached Dr. Ricardo Weinstein's July 1, 2014, report. (ECF No. 25-1 at 11). Dr. Weinstein ultimately diagnosed Perez with Intellectual Development Disability (mental retardation). (*Id.* at 19).

In March 2015, the trial court entered on order authorizing the State to hire an expert to independently examine Perez. (ECF No. 25-10; 25-11). The State hired Dr. Martha Mahaffey to examine Perez. (*Id.*) Dr. Mahaffey ultimately concluded that "to a reasonable degree of professional certainty [Perez did] not meet the criteria for intellectual disability." (ECF No. 53-1 at 27). The trial court scheduled a hearing pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002) for August 3, 2015. (ECF No. 25-15). The trial court later cancelled the *Atkins* hearing. (ECF No. 52-3 at 6).

On August 20, 2015, Perez appeared with counsel for a change of plea hearing. (ECF No. 25-18). At the hearing, the State informed the trial court that, pursuant to negotiations, Perez would enter a guilty plea to first degree murder with use of a deadly weapon and stipulate to a sentence of life without the possibility of parole and a consecutive 20 years for a deadly weapon enhancement. (*Id.* at 3; *see also* Amended Indictment, ECF No. 25-16).

The trial court then canvassed Perez:

THE COURT: All right. Let's begin with Mr. Perez. Mr. Perez, the Court is in possession of a written plea of guilty which was signed by you. Is that your signature here on Page 5 of the written plea of guilty?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: Before I may accept your written plea of guilty, I must be satisfied that your plea is freely and voluntarily given. Are you making this plea freely and voluntarily?

DEFENDANT PEREZ: Yes, Your Honor.

THE COURT: All right. Other than what is contained in the written plea of guilty and what has been stated here in open court this morning, have any promises or threats been made to induce you to enter your plea?

DEFENDANT PEREZ: No, ma'am.

THE COURT: All right. Are you pleading guilty to the felony charge of murder with use of a deadly weapon first degree because in truth and in fact you are guilty?

DEFENDANT PEREZ: Yes, Your Honor.

THE COURT: All right. Prior to signing the written plea of guilty, did you read it?

DEFENDANT PEREZ: Yes.

THE COURT: Or you read it yourself?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: Okay. And did you understand everything contained in the written plea of guilty?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: Did you also read the amended indictment charging you with the crime of first degree murder with use of a deadly weapon?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: And did you understand everything contained in that amended indictment?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: Did you have a full and ample opportunity to discuss your plea of guilty as well as the charge to which you're pleading guilty with your [trial counsel]?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: All right. And did you also go over and discuss the valuable constitutional rights that you are waiving and giving up by virtue of pleading guilty in this case?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: Okay. And did [trial counsel], you know, answer and address any questions or concerns that you had to your satisfaction? Did they explain everything to you to your satisfaction?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: Okay. And are you satisfied thus far with the representation that you've received from your [trial counsel]?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: Okay. Before we proceed with your plea, do you have any questions that you would like to ask me, the Court, about any of the things we've just covered?

DEFENDANT PEREZ: No, ma'am.

THE COURT: All right. Let's turn to the charging document. Tell me in your own words what you did on or about July 28th, 2011, here in Clark County, Nevada, that causes you to plead guilty to first degree murder with use of a deadly weapon.

[No audible response]

THE COURT: Did you strangle a woman by the name of Katherine Cole by twisting a pillowcase into a ligature and wrapping it around her neck until she died of strangulation?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: All right. And did you do that with premeditation and deliberation?

DEFENDANT PEREZ: I did it because of the robbery.

THE COURT: Okay. So you did that in furtherance of committing the crime of robbery, is that correct?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: And did you conspire with Ms. Autumn Cole and Lorenzo Cadenas Sanchez to commit this crime of robbery?

DEFENDANT PEREZ: Yes.

THE COURT: And did you and the others enter the home together where the murder occurred to commit -- did you and Ms. Cole enter the home where the murder occurred to commit the robbery?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: And you killed Ms. Cole to further your desire of robbing her, is that true?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: And Mr. Cardenas Sanchez provided transportation and drove you away, is that right?

DEFENDANT PEREZ: Yes, ma'am.

THE COURT: Is that acceptable, State?

MR. DIGIACOMO: It is, Judge.

(*Id.* at 4-7). After canvassing Perez, the trial court accepted Perez's guilty plea as freely and voluntarily given. (*Id.* at 7).

Perez's guilty plea agreement, which he signed the same day as the change of plea hearing, stated that Perez had discussed the elements of the charges with his attorney, understood that the State would have to prove each element, discussed possible defenses with his attorney, believed that pleading guilty and accepting the plea bargain was in Perez's best interest and that trial would be contrary to his best interest, and that he was "signing the agreement voluntarily, after consultation with [his] attorney, and [was] not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement." (ECF No. 25-17 at 5-6). Perez's guilty plea agreement also acknowledged that his attorney had answered all his questions regarding the guilty plea agreement and its consequences to Perez's satisfaction and that he was satisfied with the services provided to him by his attorney. (*Id.* at 6).

Perez's attorney signed the certificate of counsel attached to the guilty plea agreement acknowledging that he fully explained the allegations contained in the charges that Perez was entering guilty pleas for; to the best of his knowledge, Perez was competent and understood the charges and consequences of pleading guilty as provided in the agreement; and Perez had executed the agreement voluntarily and would enter his guilty plea voluntarily. (*Id.* at 7).

On October 8, 2015, Perez appeared with counsel for sentencing. (ECF No. 25-19). Pursuant to the stipulation with the State, the court sentenced Perez to life without the possibility of parole for murder and a consecutive 8 to 20 years for the deadly weapon enhancement. (*Id.* at 14-15). On October 9, 2015, the court entered a judgment of conviction (plea of guilty). (ECF No. 25-21).

B.   **State direct appeal proceedings**

On January 7, 2016, Perez, *pro se*, filed a notice of appeal. (ECF No. 25-22). On February 12, 2016, the Nevada Supreme Court dismissed Perez's appeal as untimely

and concluded it lacked jurisdiction to consider the appeal. (ECF No. 25-26).  The Nevada Supreme Court entered remittitur on March 25, 2016.  (ECF No. 25-27).

### C. State post-conviction proceedings

On April 17, 2017, Perez, *pro se*, filed a Motion for Appointment of Specific Counsel in the Eighth Judicial District Court.  (ECF No. 25-29).  In May 2017, the state post-conviction court appointed Perez post-conviction review (PCR) counsel "due to the seriousness of the charges." (ECF No. 23-2 at 41; ECF No. 26-5).

On October 2, 2017, Perez, with the assistance of PCR counsel, filed a Supplement to Petition for Writ of Habeas Corpus (Post-Conviction).  (ECF No. 25-32).  In the supplement, Perez raised one ground for relief:

> Petitioner asserts that his right to Due Process and/or right to be free from cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and/or under state law or the Nevada Constitution was violated because Nevada's deadly weapon enhancement statute is unconstitutional in light of the United States Supreme Court's decision in *Welch v. U.S.*, 136 S.Ct. 1257 (2016), which held that *Johnson v. U.S.*, 135 S.Ct. 2551 (2015) announced a new substantive rule that has retroactive effect in cases on collateral review.

(*Id.* at 5-6).  The State responded (ECF No. 26-1) and Perez replied (ECF No. 26-2).  On April 10, 2018, the state post-conviction court denied Perez's petition and issued a Findings of Fact.  (ECF No. 26-6).

On May 4, 2018, Perez, through PCR counsel, filed a notice of appeal.  (ECF No. 26-8).  On appeal, Perez raised the following issue:

> Whether Petitioner's right to Due Process and/or right to be free from cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and/or under state law or the Nevada Constitution was violated because Nevada's deadly weapon enhancement statute is unconstitutional in light of the United States Supreme Court's decision in *Welch v. U.S.*, 136 S.Ct. 1257 (2016), which held that *Johnson v. U.S.*, 135 S.Ct. 2551 (2015) announced a new substantive rule that has retroactive effect in cases on collateral review.

(ECF No. 26-14 at 8).  The State filed an answering brief. (ECF No. 26-17).  On March 14, 2019, the Nevada Supreme Court affirmed the state court's denial of post-conviction

relief. (ECF No. 26-19). The Nevada Supreme Court issued remittitur on April 23, 2019. (ECF No. 26-20).

### D. Federal court proceedings

Perez dispatched his *pro se* federal habeas petition on or about October 7, 2018. (ECF No. 1 at 1). In the petition, Perez alleged that his trial attorneys "constantly told [him he] would get the death penalty and die alone in a cell on death row so [he] was better taking the plea deal." (*Id.* at 3). This Court appointed counsel. (ECF No. 6). On January 9, 2020, Perez filed a counseled amended petition and raised two grounds. (ECF No. 14). In Ground 1, Perez alleged that he was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution because trial counsel was ineffective for failing to move to withdraw Perez's plea which was not made knowingly, voluntarily, or intelligently. (*Id.* at 7-8). In Ground 2, Perez alleged that his guilty plea to the amended indictment was not entered into knowingly, voluntarily, and intelligently in violation of his federal constitutional rights. (*Id.* at 10).

The State filed a motion to dismiss the amended petition. (ECF No. 22). On March 22, 2021, the Court granted the motion to dismiss in part noting that "Grounds 1 and 2 are actually unexhausted, but they are technically exhausted because they would be procedurally barred by the state courts." (ECF No. 34 at 6). The Court deferred "consideration of whether [Perez] can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default of grounds 1 and 2 until after the filing of an answer and reply in this action." (*Id.*) The Court now addresses whether Perez can overcome the procedural default of both his claims.

### III. LEGAL STANDARD

"A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Ramirez*, 142 S.Ct. 1718, 1727 (2022). "When the prisoner has failed to do so, and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'" *Id.* at 1727-28. To overcome procedural default and permit

federal habeas review of the claim, the prisoner must show "cause for the default" and "actual prejudice" from a violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. Under *Martinez*, when a State "requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)." *Id.* at 14. To overcome the procedural default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a "substantial one" by demonstrating that the claim has "some merit." *Id*.

Because Perez's claims were not adjudicated on the merits by the state court, the Court reviews the claims *de novo* without the deference usually accorded to state courts under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1). *See Rodney v. Filson*, 916 F.3d 1254, 1258 (9th Cir. 2019), *Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005).

However, despite *de novo* review, the Supreme Court has held that "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel" unless the prisoner can satisfy 28 U.S.C. § 2254(e)(2)'s stringent requirements under AEDPA. *Shinn*, 142 S.Ct. at 1734-1735.

Under AEDPA, if a petitioner "failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the [petitioner] shows" the following:

(A) the claim relies on--

>   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>   (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B).

## IV.  DISCUSSION

### A. Ground 1

In Ground 1 of the amended petition, Perez alleges that he was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution because trial counsel was ineffective for failing to move to withdraw Perez's plea which was not made knowingly, voluntarily, or intelligently. (ECF No. 14 at 7-8). Perez argues that he felt pressured by his attorneys because they constantly told him that, if he did not plead guilty, he would get the death penalty and die alone in a cell on death row. (*Id.* at 9). Perez asserts that this was inaccurate because, if the trial court had found Perez intellectually disabled, he would have been ineligible for the death penalty. (*Id.*) Perez also argues that trial counsel should have known that the court's plea canvass was inadequate to ensure that he entered into a knowing, intelligent, and voluntary guilty plea. (*Id.*)

In a previous order, this Court found that Ground 1 was procedurally defaulted. To excuse the procedural default for an ineffective assistance of counsel (IAC) claim, Perez must demonstrate cause and prejudice.

Perez may demonstrate cause and prejudice by establishing all four of these necessary prongs: (1) "the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim"; (2) Perez had no counsel during his state collateral review proceeding or that his counsel during that proceeding was ineffective under the standards of *Strickland*; (3) "the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'"; and (4) state law requires ineffective-assistance-of-trial-counsel claims to be raised in initial-review collateral

proceedings. *See Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez*, 566 U.S. 1 (2012)).

There is no dispute that Nevada requires prisoners to raise IAC claims for the first time in initial-review collateral proceedings. *See Rodney*, 916 F.3d at 1260; *see also Corbin v. State*, 892 P.2d 580, 582 (Nev. 1995) (noting that the Nevada Supreme Court "will not entertain claims of ineffective assistance of counsel on direct appeal"). Thus, to excuse the procedural default, Perez must demonstrate that his IAC claim is (1) substantial and (2) that his post-conviction review (PCR) counsel was ineffective under *Strickland*.

To demonstrate that an IAC claim is substantial, the claim must have "some merit." *Martinez*, 566 U.S. at 14. A claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 16. A federal court must examine the IAC claim under the standards of *Strickland* to determine whether the claim is substantial. Although *Strickland*'s standards for deficient performance and prejudice are standards for an eventual review of the merits of the underlying IAC claim, the question of substantiality under *Martinez* is more akin to whether a certificate of appealability should issue. *See id.* at 14. A court may conclude that a claim is substantial when a petitioner has shown that resolution of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Thus, to determine whether a claim is substantial, *Martinez* requires the district court to review but not determine whether trial or appellate counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to determine only whether resolution of the merits of the IAC claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them.

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and

(2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

When the ineffective assistance of counsel claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004). As such, "[t]o succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases." *Id.* at 979–80. "[A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was ineffective. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (internal quotations omitted). In *McMann v. Richardson*, 397 U.S. 759 (1970), the Supreme Court noted that:

> the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

*Id.* at 769-70.

And regarding the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

The Court finds that Perez's IAC claim is insubstantial. With respect to performance, Perez fails to demonstrate that his trial counsel's representation fell below an objective standard of reasonableness for not withdrawing Perez's guilty plea as not made knowingly, voluntarily, or intelligently. First, there is nothing in the plea canvass or plea agreement to demonstrate that Perez's guilty plea was not made knowingly, voluntarily, or intelligently or that trial counsel should have questioned the validity of the guilty plea. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (explaining that a criminal defendant's representations and "any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity"); *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth."). Perez signed a plea agreement attesting to his understanding of the charges, the State's burden, his defenses, his belief that pleading guilty over going to trial was in his best interest, that he was signing the agreement voluntarily, that he had consulted his attorney, and that his attorney had answered all his questions. Perez's trial counsel also attested that he thought Perez understood all the consequences of pleading guilty and that Perez was executing the agreement and entering into a guilty plea voluntarily. At the plea canvass, Perez again affirmed that he understood his charges, the plea agreement, what he was pleading guilty to, that his plea was freely and voluntarily given, and that he had discussed this with his attorneys. The

Court finds that Perez has not demonstrated that reasonable jurists would debate trial counsel's failure to question the validity of Perez's guilty plea.

Second, there is no factual basis in the trial court proceedings to support Perez's argument that trial counsel improperly advised him about the potential consequences of his charges or that trial counsel pressured him to take the plea deal. Perez is attempting to now argue that trial counsel pressured him to plead guilty because trial counsel "constantly told [him he] would get the death penalty and die alone in a cell on death row so [he] was better taking the plea deal." However, under *Shinn*, this Court cannot consider this "evidence" or hold an evidentiary hearing on the matter because Perez cannot satisfy the requirements of 28 U.S.C. § 2254(e)(2) to hold an evidentiary hearing on the matter because these facts were discoverable at the time of the plea negotiations. As such, the Court denies Perez's request for an evidentiary hearing. (*See* ECF No. 14 at 14).

Even if the Court did indulge in these arguments, the Court would find them without any substance. *See e.g.*, *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting a petitioner's claim, in part, because "[o]ther than [petitioner's] own self-serving statement, there [was] no evidence" to support his allegations); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (explaining that the petitioner's "self-serving statement, made years later," was insufficient to support the petitioner's claim). Although Perez affirmatively asserts that he is intellectually disabled in his habeas petition, the state court proceedings demonstrate that the matter of his intellectual disability was unresolved at the time of the change of plea hearing. At the time of the plea canvass, Perez had a doctor's report stating that Perez was intellectually disabled, and the State had a conflicting doctor's report stating that Perez was not intellectually disabled. Instead of going forward with the *Atkins* hearing, Perez, on the advice of counsel, pled guilty to life imprisonment without the possibility of parole. *See Premo v. Moore*, 562 U.S. 115, 124 (2011) (discussing "[t]he opportunities [of an early plea] includ[ing] pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome

not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve").

Although an intellectually disabled person may not be sentenced to death, he may still be criminally sanctioned. *See Atkins v. Virginia*, 536 U.S. 304, 318, 321 (2002) (holding that even though the Eighth Amendment prohibits executing intellectually disabled persons, they "frequently know the difference between right and wrong and are competent to stand trial" and remain subject to criminal sanctions). As the Supreme Court noted in *McMann*, the decision to plead guilty before the evidence is in involves difficult judgments and predictions about how the facts may be viewed by the court. If the trial court found that Perez was not intellectually disabled, Perez would still be eligible for the death penalty. *See* Nev. Rev. Stat. § 200.030.4(a) (2013) (providing that a person convicted of murder of the first degree may be punished by death). If the trial court found that Perez was intellectually disabled, he would still be eligible for life imprisonment without the possibility of parole. *See* Nev. Rev. Stat. § 200.030.4(b)(1) (2013) (providing that a person convicted of murder of the first degree may be imprisoned in a state prison for life without the possibility of parole). Perez has not demonstrated that trial counsel's advice that he should take the plea deal for life imprisonment without the possibility of parole or risk the death penalty at trial if the *Atkins* hearing was unfavorable to Perez was not within the range of competence demanded of counsel in criminal cases. The Court does not discount the alleged "pressure" Perez felt to take the plea deal but notes that there would be some "pressure" to choose life imprisonment without the possibility of parole over death. Again, the Court finds that Perez has not demonstrated that reasonable jurists would debate trial counsel's failure to question the validity of Perez's guilty plea.

Because Perez's trial counsel IAC claim is insubstantial, Perez fails to demonstrate cause and prejudice to excuse the procedural default of Ground 1. The Court dismisses Ground 1 as procedurally defaulted.

///

### B. Ground 2

In Ground 2, Perez alleges that his guilty plea to the amended indictment was not entered into knowingly, voluntarily, and intelligently in violation of his federal constitutional rights. (ECF No. 14 at 10). In a previous order, the Court found that, if, under *Martinez*, Perez could excuse the procedural default of Ground 1, then Perez would have a claim that trial counsel failed to move to withdraw his plea as unknowing, involuntary, and unintelligent. (ECF No. 34 at 5). That claim could provide the cause and prejudice to excuse the procedural default of ground 2, which is the underlying claim that the plea was unknowing, involuntary, and unintelligent. (*Id.* at 5-6).

As discussed above, Perez cannot excuse the procedural default of Ground 1 and, thus, Ground 1 does not provide the cause and prejudice to excuse the procedural default of Ground 2. The Court now dismisses Ground 2 as procedurally defaulted.

### V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Perez. Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). This court has *sua sponte* evaluated the remaining claims within the habeas petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id.*

Applying these standards, a certificate of appealability is unwarranted.

## VI. CONCLUSION

It is therefore ordered that the first amended petition for a writ of habeas pursuant to 28 U.S.C. § 2254 (ECF No. 14) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of the Court is directed to substitute Calvin Johnson for Respondent Attorney General of the State of Nevada on the docket sheet, enter judgment accordingly, and close the case.

DATED: July 5, 2022.

_____
UNITED STATES DISTRICT JUDGE